State, Farmers' National Bank, pros., v. Cook, Col.

---

THE STATE, THE FARMERS' NATIONAL BANK OF NEW JERSEY, AT MOUNT HOLLY, PROSECUTORS, v. FRANKLIN COOK, COLLECTOR OF TAXES FOR THE TOWNSHIP OF NORTHAMPTON, IN THE COUNTY OF BURLINGTON.

1. A *certiorari* to bring up taxes assessed against the individual stockholders of a bank, upon the prosecution of the bank itself, dismissed as irregular.
2. An application to amend, by substituting the names of four of the taxed stockholders, made at the hearing, was denied.
3. A tax against a stockholder, resident in the township where the bank is located, and taxed on the same duplicate for other personal property, *held* to be good, although the valuation was carried out separately.
4. A tax against a non-resident stockholder *held* to be good.

---

This case was argued before Justices ELMER, BEDLE, and DALRIMPLE, by—

*J. Wilson* and *A. Browning,* for the prosecutors, and by

*F. Voorhees,* for the township.

The opinion of the court was delivered by

ELMER, J. The *certiorari* in this case, allowed by a justice in vacation, commands to be certified and sent to this court, the assessment of taxes for the year 1866, made by the assessor of the township of Northampton against the stockholders of The Farmers' National Bank of New Jersey, at Mount Holly, upon the capital stock of said bank, and all the proceedings of such assessor therein.

The return of the collector, shows assessments upon about

one hundred and thirty stockholders, by their respective names, comprising, as was understood, all the persons holding shares of stock in said bank, a majority of whom reside in the township of Northampton, but some reside in other parts of this state, and some in other states of the Union, and a few have died. It appears that some real estate was taxed to the bank, as a corporation, as it is admitted, correctly, the tax thereon having been paid; and the bank was also taxed for its surplus capital, but this tax was remitted by the commissioners of appeal, so that the only taxes complained of are the taxes assessed to the several stockholders.

It appears by the evidence, that the collector served a notice on the cashier, at the banking-house, directed to the cashier, president, and directors of the Farmers' National Bank of New Jersey, at Mount Holly, setting forth the several assessments against the respective stockholders, and having added thereto the words: " Total amount of tax assessed to the foregoing stockholders, and to be paid by you out of the dividends now due or may be hereafter due them, is $3000." It does not appear that any notices of said assessments were served on the stockholders.

It is now insisted, on behalf of the township, that this _certiorari_ is erroneous, and must be dismissed. In the case of _The State_ v. _Flavel_, 4 _Zab._ 384, it was held " that it does not lie in the mouth of every individual stockholder, whether his interest be small or great, in a corporation aggregate, to complain of an illegal assessment against the body corporate. The exceptions should be made by the corporation itself, which is wrongfully assessed, and not by the individual stockholders." The converse of this rule, namely, that the corporation cannot take exception to an erroneous assessment against its individual stockholders, is equally well founded. The corporation is not the agent of the stockholders for any such purpose. Each one must judge and act for himself in contesting an assessment, and this court has always acted upon that principle, and has, by a positive

rule, directed that a writ of *certiorari* to bring up taxes shall not include more than four prosecutors in one writ.

On behalf of the prosecutors, it is insisted that the act by virtue of which these taxes were assessed, makes them a charge on the bank, and thus makes it a party in interest; and that the collector's notice to the officers was in pursuance of this feature of the law. It is true that the sixteenth section of the law (*Acts of* 1866, *p.* 1085,) enacts that " it shall be the duty of the said banks to retain and pay the amount of tax assessed to each of the said stockholders thereof, out of the dividends from time to time declared;" but this does not make the taxes a charge against the bank, either in form or in substance. The bank is not required to pay the taxes out of its own funds, nor is any process against the corporation authorized to compel it to do so. The notice of the collector did not attempt to charge the bank, and only required it to retain and pay out money in its hands, the separate property of the respective stockholders, after it had so become by a dividend being declared. The law, in accordance with the act of congress authorizing the establishment of national banks, as authoritatively interpreted by the Supreme Court of the United States, in the case of *Van Allen* v. *Nolan*, 3 *Wallace* 573, deals with shares of stock, and taxes them as the personal property of each shareholder, and it is held in that case that such a tax is not a tax on the capital or property of the bank.

Application was made to us, if the writ, as allowed and prosecuted, should be considered erroneous, to permit it to be amended, by substituting, as prosecutors, four stockholders, who were stated to have authorized such a use of their names. If this was done, it would, of course, leave all the taxes against the other stockholders to remain unaffected. But to do this, would make an entirely different case from that presented, and involve the necessity of authorizing new testimony. Such a change, at this stage of the proceedings, is, so far as we are informed, without precedent, and, in my judgment, is not expedient.

VOL. III.                Y

If there was no other reason for denying this application, it would be a decisive objection that, in my opinion, the taxes assessed against the four stockholders named to us, all of whom were at the time residents of the township of Northampton, were correctly assessed. The objections made to the proceedings have been fully argued, and considering the immediate and universal importance of the questions raised, it is desirable that the opinion of the court should be expressed without further delay.

The objections to the assessments now urged, are : *First*, that the collector made no demand of the taxes upon the respective stockholders, as required by law. Admitting this to be so, the assessment is not the less correct, and it is only the original assessment which is properly before us. How the taxes are to be collected, under existing circumstances, we are not called upon to decide. In the case of *The State* v. *Collector of Jersey City*, 4 *Zab*. 115, this court refused to set aside a tax, although it was doubtful what means of collecting it were to be used.

*Secondly*, it is insisted that these taxes are illegal, because the assessment, it is alleged, was not so made, as in the language of the proviso of the forty-first section of the act of congress, " to include the value of the shares of stock, in the valuation of the personal property of said stockholder ;" and this is the most important, and, I may add, the most difficult question presented by the case before us. The language of the proviso is, " provided that nothing in this act shall be construed to prevent all the shares of any of said associations, held by any person or body politic, from being included in the valuation in the personal property of such person or corporation, in the assessment of taxes imposed by or under state authority, at the place where such bank is located." And it is now insisted that the value of the stock must be literally included with other personal property, by summing up the valuations together, and that persons who happen to own no other personal property taxable at the

place where the bank is located, cannot be taxed for their shares anywhere.

The counsel for the prosecutors rely on the case of *Markoe* v. *Hartcraft*, 6 *Am. L. Reg.* 487, decided by Judge Agnew, in the court of *nisi prius*, at Philadelphia. The opinion of this able jurist is certainly entitled to the most respectful consideration. It cannot escape our notice, however, that besides the fact that his decision is not an authority necessarily to be followed by this court, those parts of his opinion most relied upon are mere *obiter dicta*, and were not necessary for the decision of the case before him, which was too plain to admit of reasonable doubt. But giving full weight to all he advances, it does not follow that the taxes assessed upon the stockholders of the Mount Holly bank, who resided in the township of Northampton, are not valid. What is the precise meaning of the phrase, " being included in the valuation of the personal property " of the stockholder, he was not called on to consider. In the case before him, there was no valuation of the shares or of any other property. The law of Pennsylvania provided for no assessment, but required the cashier of every bank to collect annually, from every stockholder, a tax of one per cent. on the par value of the stock held by him, and to pay the same to the state treasury.

Webster defines the word " include " as synonymous with comprise, comprehend, contain, and gives this apt example : " The word duty includes what we owe to God, to our fellow men, and to ourselves; it includes also a tax payable to the government." The precise facts in regard to the assessments before us are not very distinctly stated; but it is evident that whatever personal property was held by those stockholders who resided in the township in which the bank is located, was valued and taxed to them in the same list of assessment, or duplicate of taxes, as it is called, the form of which is prescribed by our law, and a copy of which is delivered by the assessor to the collector, and in which the taxes assessed to the shareholders. returned to us, are con-

tained, although the valuation and assessment for the stock is made and carried out in a distinct line, and in that respect separate from the valuation and tax. of the other property. In my opinion, such a mode of valuation was a substantial compliance with the requirements of the proviso. The valuation of the shares was thus comprised, contained, or included in the valuation of the personal property of the stockholders. The valuation of both descriptions of property was made at the same time, by the same process, by the same officer, at the same rate, and included in the same list. In my opinion, the language of the proviso is to be interpreted liberally, according to its true intent and meaning, and so as to secure the objects intended. If it is literally interpreted, it will follow, that in those states where there are no banks organized under the authority of the state, shares of bank stock cannot be taxed at all; nor can a stockholder, even although resident in the place where a national bank is located, who happens to have no other personal property, be taxed for his bank shares, neither of which results can have been intended by congress. The object of the proviso was not to prescribe a uniform mode of regulating the details of an assessment, in all the different states and territories, but to guard the national banks against unfriendly taxation, by forbidding any tax directly on the capital or property of the bank, and by requiring the shares of stockholders to be taxed, substantially as other personal property is taxed, at the place where the bank should be located.

The power of taxation, by the separate states of the Union, is of vital importance, and under the federal constitution, as a general rule, is concurrent with the power of congress; the qualifications of the rule being the exclusion of the states from the taxation of the means and instruments employed in the exercise of the functions of the general government, and that as respects a subject matter over which congress and the states may exercise a concurrent power, but from the exercise of which congress, by reason of

its paramount authority, may exclude the states, congress may, instead of thus excluding them, leave them free to act, subject to such restrictions as it may see fit to impose. This is the power exercised by congress, in the forty-first section of the act authorizing the establishment of national banks, and so it is treated by the majority of the justices of the Supreme Court, in the case of *Van Allen*. So far as the taxes assessed on stockholders resident in the township of Northampton are concerned, I have no doubt that the requirements of the act of congress have been substantially complied with.

Whether the taxes imposed on the stockholders, who were resident in other townships of the state, or in other states, can be sustained, is a question of more difficulty. If such a stockholder happened to have other personal property situated there, and liable to taxation, the act of congress may have been literally complied with. The second section of the tax law (*Acts of* 1866, *p.* 1079,) enacts that all real and personal estate within this state shall be liable to taxation, and it was held by this court, in the case of *The State* v. *Ross*, 3 *Zab.* 517, that under a similar law, chattels of a non-resident, kept permanently in this state, might be taxed in the township where they were found. The effect of this may, no doubt, be in some cases to produce a double taxation; but this, as was remarked in the case of *The State* v. *Bentley*, 3 *Zab.* 542, results from our peculiar situation, and although to be avoided, yet so far as it is produced by that conflict of laws which arises from a variety of sovereignties, so intimately connected as ours, it cannot always be prevented. It was this danger, however, which, in the case of shares of stock in the national banks, was entirely avoided by requiring them to be taxed only at the place where such bank is located.

It was held by this court in the case of *The State* v. *Hart*, 2 *Vroom* 435, as it would seem, substantially in accordance with the opinion of Judge Agnew on this point, that the place where the bank is located, means the place where the authority to tax is located—that is to say, if it is a state tax

that is imposed, the tax may be assessed in any part of the state; if it is a county tax, in any part of the county; if a municipal tax, in any part of the municipality within which the bank is located, and not elsewhere. This will secure the requisite uniformity, and prevent any discrimination against the stockholders, who are thus placed in a position of exact equality with other owners of personal property at the place. I see no reason to suppose that congress intended to confine the taxation of stockholders to those who should happen to reside at the place where the bank is located. On the contrary, the language is that nothing shall be construed to prevent all the shares held by any person or body politic, without restriction as to the place of their residence, from being included in the valuation. The whole difficulty is created by the use of the word "included." The property of non-resident stockholders, as well as of those resident at the place, has the benefit of the laws and police of the state and municipality, and, in all fairness, ought to contribute to their maintenance. To exempt non-residents altogether from a burthen imposed on resident stockholders, would be a discrimination so unreasonable and unjust, that I cannot believe it was intended, and do not think it ought to be sanctioned, if any other construction of the law is possible.

In the case of *The People* v. *Com. of Taxes*, 35 *N. Y. R.* 423, it was expressly decided that the shares of the stockholders, who were non-residents of the State of New York, are taxable at the place where the bank is located in said state, and it is stated in a note that this judgment was affirmed by the Supreme Court of the United States.

This *certiorari* was improvidently allowed, and must be dismissed, with costs.

*Writ dismissed.*